[No. C002404. Third Dist. Apr. 24, 1989.]

CITY OF REDDING, Plaintiff and Appellant, v.
SHASTA COUNTY LOCAL AGENCY FORMATION
COMMISSION, Defendant and Respondent.

**[Opinion certified for partial publication.†]**

† Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except part I of the Discussion.

**COUNSEL**

Randall A. Hays, City Attorney, and Walter P. McNeill, Assistant City Attorney, for Plaintiff and Appellant.

David R. Frank, County Counsel, for Defendant and Respondent.

**OPINION**

**SIMS, Acting P. J.**—City of Redding (Redding), plaintiff below, appeals from a judgment of the Shasta County Superior Court dismissing Redding's petition for writ of mandate and injunctive relief following the sustaining

without leave to amend of the demurrer of defendant Shasta County Local Agency Formation Commission (LAFCO). The sole issue on appeal is whether LAFCO had a duty to prepare an environmental impact report (EIR) under the California Environmental Quality Act (CEQA; Pub. Res. Code, § 21000 et seq.) before approving an annexation proposal submitted to LAFCO by the City of Anderson (Anderson). (All further undesignated statutory references are to the Public Resources Code.) We shall conclude LAFCO had no duty to prepare an EIR. We shall therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Redding is located on the north side of the Sacramento River and Anderson is on the south side.

The two cities are litigious neighbors. Over the past several years, the cities have frequently disagreed about land use planning matters, and they have pursued numerous lawsuits in the Shasta County Superior Court and in this court. This appeal involves an attempt by Anderson to annex a parcel of property lying on the north side of the river.

In an unpublished portion of this opinion, we recount the procedural history of various lawsuits in order to demonstrate why Redding's appeal is not moot. Here, we describe the procedural history of events material to the issues discussed in the published portion of this opinion. This history, which is uncontested by the parties, is taken from Redding's petition and from another lawsuit of which the trial court took judicial notice. (See *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

As pertinent here, in February 1986 Anderson commenced proceedings to annex the subject property. In the course of these proceedings, the Anderson Planning Commission developed and the Anderson City Council approved the annexation plan, the prezoning of the area to be annexed, and the establishment of general plan designations for the area. On February 18, 1986, the city council also approved a "Negative Declaration" concerning the environmental effects of the proposed annexation.[1]

Anderson submitted the annexation proposal and negative declaration to LAFCO pursuant to Government Code section 56375, subdivision (d).[2]

---

[1] A "negative declaration" under CEQA is a "written statement briefly describing the reasons that a proposed project will not have a significant effect on the environment." It does not require the preparation of an EIR. (§ 21064.)

[2] The Cortese-Knox Local Government Reorganization Act (Gov. Code, § 56000 et seq.) creates local agency formation commissions for each county in the state and defines their

Before LAFCO acted on the annexation proposal, Redding sued Anderson (Shasta County No. 87481). As pertinent here, that lawsuit attacked Anderson's negative declaration and sought a writ of mandate to vacate Anderson's approval of the annexation and a preliminary injunction to bar Anderson from approving the annexation in the future without first doing an EIR.

While case No. 87481 was pending, LAFCO approved the annexation and ratified Anderson's negative declaration on July 17, 1986.

On August 11, 1986, Redding filed this action against LAFCO (Shasta County No. 88666), seeking a writ of mandate to vacate LAFCO's approval of the annexation and its ratification of Anderson's negative declaration, and to order LAFCO to prepare an EIR for the project.

The trial court ultimately sustained LAFCO's demurrer without leave to amend and dismissed the petition.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . .

II

*LAFCO Had No Duty To Prepare an EIR*

The parties do not dispute that LAFCO's approval of Anderson's annexation is a "project" requiring CEQA review. (§ 21065, subds. (a), (c); *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 279 [118 Cal.Rptr. 249, 529 P.2d 1017].) The parties contest the respective duties of Anderson and LAFCO under CEQA.

Redding argues LAFCO should have prepared an EIR based on two inconsistent theories: (1) LAFCO was always the "lead agency" on the project, not the "responsible agency," and therefore had a mandatory duty to prepare an EIR; and (2) even though LAFCO was initially the

---

powers and duties. Government Code section 56375, subdivision (d), gives LAFCO the power to approve annexations.

*See footnote, *ante,* page 1169.

"responsible agency," it had a duty to prepare an EIR when Anderson submitted a defective negative declaration to it. We address these contentions serially.

## A. *LAFCO Was Not the Lead Agency on the Annexation Project.*

The terms "lead agency" and "responsible agency" are terms of art under CEQA.

Section 21067 provides: " 'Lead agency' means the public agency which has the principal responsibility for carrying out or approving a project which may have a significant effect upon the environment."

Section 21069 provides: " 'Responsible agency' means a public agency, other than the lead agency, which has responsibility for carrying out or approving a project."

Under section 21165, a lead agency "shall prepare, or cause to be prepared by contract, the environmental impact report for the project, if such report is required . . . ."

The state CEQA guidelines (hereafter Guidelines) (Cal. Code Regs., tit. 14, § 15000 et seq.) implement CEQA. (See § 21083; *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 391, fn. 2 [253 Cal.Rptr. 426, 764 P.2d 278].) Guidelines section 15050, subdivision (a) ["Lead Agency Concept"] says, "Where a project is to be carried out or approved by more than one public agency, one public agency shall be responsible for preparing an EIR or negative declaration for the project. This agency shall be called the lead agency."

Guidelines section 15051 ["Criteria for Identifying the Lead Agency"] states in pertinent part: "Where two or more public agencies will be involved with a project, the determination of which agency will be the lead agency shall be governed by the following criteria:

". . . . . . . . . . . . . . . . . . . . . .

"[b] (2) Where a city prezones an area, the city will be the appropriate lead agency for any subsequent annexation of the area and should prepare

the appropriate environmental document at the time of prezoning. The local agency formation commission shall act as a responsible agency."[5]

■ Here, because Anderson prezoned the area in question, Guidelines section 15051, subdivision (b)(2) plainly designated Anderson as lead agency with responsibility for preparing an EIR.

Redding contends Guidelines section 15051, subdivision (b)(2) cannot be reconciled with the holding of our Supreme Court in *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d 263 and is therefore invalid. (See *Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032].) In *Bozung,* the court held that a LAFCO, not a city, was the lead agency with respect to an annexation project. (13 Cal.3d at pp. 285-286.) Redding contends *Bozung*'s holding became a part of section 21067, defining "lead agency," and the holding has not been changed by the Legislature. (See *People* v. *Hallner* (1954) 43 Cal.2d 715, 720 [277 P.2d 393].)

Redding misperceives the basis of *Bozung*'s holding and overlooks changes in statutes and Guidelines enacted and promulgated since *Bozung.*

As we shall explain, when *Bozung* was decided in 1975, the concept of a "responsible agency" appeared nowhere in CEQA's statutory scheme. Then, as now, section 21165 empowered the Office of Planning and Research to designate which public agency should be "lead agency" in the event of a dispute. However, other than such designation, former Guidelines section 15065, subdivision (c) then provided the only basis for deciding which of several qualified public agencies concerned with a project was to play the role of "lead agency." (*Bozung, supra,* 13 Cal.3d at pp. 282, 286, fn. 30.) That Guideline stated in relevant part "[T]he agency which is to act first on the project in question shall be the lead agency."[6]

The *Bozung* court relied on this former guideline in concluding that LAFCO was the appropriate lead agency. (*Bozung, supra,* 13 Cal.3d at pp. 285-286.)

Shortly after *Bozung,* the Legislature enacted various statutes which for the first time set forth a definition of "responsible agency," clarified the

---

[5] Prezoning by a city is authorized by Government Code section 65859, which provides in pertinent part: "A city may prezone unincorporated territory adjoining the city for the purpose of determining the zoning that will apply to such property in the event of subsequent annexation to the city. The method of accomplishing such prezoning shall be as provided by this chapter for zoning within the city. Such zoning shall become effective at the same time that the annexation becomes effective."

[6] This language is now found in Guidelines section 15051, subdivision (c).

roles of "lead agency" and "responsible agency," and provided a basis in CEQA other than temporal sequence of action for distinguishing between the roles and responsibilities of two or more public agencies in connection with a project.

Thus, in 1976, the Legislature added section 21069, creating and defining a "responsible agency." (Stats. 1976, ch. 1312, § 7.1, p. 5891.) In the same year, the Legislature also enacted section 21002.1, which provided in pertinent part: [7] "(d) . . . A local agency functioning as a lead agency shall have responsibility for considering the effects, both individual and collective, of all activities involved in a project. A local agency functioning as a responsible agency shall have the responsibility for considering only the effects of those activities involved in a project, which it is required by law to carry out or approve." (Stats. 1976, ch. 1312, § 1.5 p. 5889.)

Additional amendments to CEQA were enacted in 1977, 1979, and 1980 which progressively sharpened the distinction between the roles and duties of lead agencies and responsible agencies.[8] Among these enactments was section 21080.1, which gives the lead agency responsibility for deciding whether an EIR or negative declaration shall be prepared and makes the determination binding on a responsible agency unless the determination is challenged by lawsuit pursuant to section 21167.[9]

It is in this new statutory setting that Guidelines section 15051, subdivision (b)(2) was promulgated in 1983.[10] We have no doubt the Guideline is fully congruent with the amendments to CEQA undertaken by the Legisla-

---

[7] By amendment in 1977, the term "local agency" in this provision was changed throughout to "public agency." (Stats. 1977, ch. 1200, § 1.5, pp. 3996-3997.)

[8] In 1977 the Legislature enacted sections 21080.1 ("Environmental impact report or negative declaration; determination by lead agency; finality"), 21167.2 ("Failure to commence action or proceeding within time limits; presumption that impact report complies with division"), and 21167.3 ("Assumption that impact report or negative declaration complies with division; conditional approval or disapproval"), and amended section 21166 ("Subsequent or supplemental impact report; conditions") to include the terms "lead agency" and "responsible agency." (Stats. 1977, ch. 1200.)

In 1979 and 1980, the Legislature amended section 21167.3 to diminish further the freedom of "responsible agencies" to take independent action after a "lead agency" has carried out its statutory duties. (Stats. 1979, ch. 81; Stats. 1980, ch. 131.)

[9] Section 21080.1 provides: "The lead agency shall have the responsibility for determining whether an environmental impact report or a negative declaration shall be required for any project subject to the provisions of this division. Such determination shall be final and conclusive on all persons, including responsible agencies, unless challenged as provided in Section 21167."

[10] Guidelines section 15051 forms part of article 4 ("Lead Agency"), sections 15050-15053, which became effective August 1, 1983. (Cal. Code Regs., tit. 14, p. 302.)

ture since *Bozung* and is authorized by the Legislature's express command that the Guidelines "shall also include procedures for determining the lead agency pursuant to Section 21165." (§ 21083, subd. (c).) Indeed, it appears the Guideline was adopted to solve a problem the *Bozung* court twice grappled with: that requiring a LAFCO to prepare an EIR was inefficient because two EIR's would be required for the same annexation, one by a LAFCO and one by a city undertaking zoning of the area sought for annexation. (See *Bozung, supra,* 13 Cal.3d at pp. 282, 286.) Guidelines section 15051, subdivision (b)(2) solves that problem by using the new statutory concepts of "lead agency" and "responsible agency" to designate a city as the appropriate preparer of an EIR where it has prezoned the area to be annexed. We therefore conclude the Guideline was authorized by CEQA and was reasonably necessary to carry out the legislative mandate. (See *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687], followed in *Lindeleaf* v. *Agricultural Labor Relations Bd.* (1986) 41 Cal.3d 861, 871 [226 Cal.Rptr. 119, 718 P.2d 106].)

Since Guidelines section 15051, subdivision (b)(2) is authorized under CEQA, we have an obligation, at a minimum, to give the Guideline great weight. (*Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 47 Cal.3d at p. 391, fn. 2.) We see no reason why the Guideline should not control here. We therefore conclude Anderson, not LAFCO, was initially the lead agency with the obligation of preparing an EIR. (§ 21165; Guidelines §§ 15050, subd. (a), 15051, subd. (b)(2).) LAFCO was a responsible agency. (§ 21069.)

*Bozung* presents no obstacle to this conclusion. Since the applicable CEQA statutes and Guidelines have been amended and are now different from those relied on by the Supreme Court in *Bozung,* that case does not control the designation of a lead agency here. ▮ "A decision correct when rendered will, of course, lose its force as a precedent if a later statute changes the rule." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 794, pp. 767-768, and authorities cited.) The same holds for cases that followed *Bozung* before promulgation of (and therefore without discussion of) Guidelines section 15051, subdivision (b)(2). (See *Rural Landowners Assn.* v. *City Council* (1983) 143 Cal.App.3d 1013, 1025 [192 Cal.Rptr. 325]; *City of Santa Clara* v. *Local Agency Formation Com.* (1983) 139 Cal.App.3d 923, 928 [189 Cal.Rptr. 112]; *Environmental Coalition of Orange County* v. *Local Agency Formation Com.* (1980) 110 Cal.App.3d 164, 167 [167 Cal.Rptr. 735]; *People* ex rel. *Younger* v. *Local Agency Formation Com.* (1978) 81 Cal.App.3d 464, 481 [146 Cal.Rptr. 400].)

B. *As a Responsible Agency, LAFCO Was Not Permitted To Take Affirmative Steps Toward the Production of a New CEQA Document.*

 The trial court concluded LAFCO was statutorily prohibited from rejecting Anderson's negative declaration and requiring an EIR, because Redding had commenced a lawsuit (Shasta County No. 87481) attacking Anderson's negative declaration before LAFCO had acted on the annexation. As we shall explain, the trial court was correct.

The applicable statute is section 21167.3 which provides: "(a) If an action or proceeding alleging that an environmental impact report or a negative declaration does not comply with provisions of this division is commenced during the period described in subdivision (b) or (c) of Section 21167, and if an injunction or stay is issued prohibiting the project from being carried out or approved pending final determination of the issue of such compliance, responsible agencies shall assume that the environmental impact report or the negative declaration for the project does comply with the provisions of this division and shall issue a conditional approval or disapproval of such project according to the timetable for agency action in Article 5 (commencing with Section 65950) of Chapter 4.5 of Division 1 of Title 7 of the Government Code. A conditional approval shall constitute permission to proceed with a project when and only when such action or proceeding results in a final determination that the environmental impact report or negative declaration does comply with the provisions of this division.

"(b) In the event that an action or proceeding is commenced as described in subdivision (a) but no injunction or similar relief is sought and granted, responsible agencies shall assume that the environmental impact report or negative declaration for the project does comply with the provisions of this division and shall approve or disapprove the project according to the timetable for agency action in Article 5 (commencing with Section 65950) of Chapter 4.5 of Division 1 of Title 7 of the Government Code. Such approval shall constitute permission to proceed with the project at the applicant's risk pending final determination of such action or proceeding."

Although the language of this statute apparently required LAFCO to assume Anderson's negative declaration was lawful under CEQA, Redding advances several arguments in support of a contrary conclusion, none of which is persuasive.

1. *Section 21167.3 applies to an annexation qualifying as a CEQA project.*

Redding argues section 21167.3 does not apply to this case because the statute assertedly covers only those projects defined as "development

projects" in Government Code section 65920 et seq. (the Permit Streamlining Act, Stats. 1977, ch. 1200), which is cross-referenced in section 21167.3, and an annexation is not such a "development project." We shall assume for purposes of argument the annexation is not a "development project" within the meaning of the Permit Streamlining Act. Even indulging the assumption, Redding's contention lacks merit.

Section 21167.3 applies to "a project" or "the project." (See *ante,* pp. 1177-1178.) As we have noted, Redding, which wants an EIR prepared, makes no claim that this disputed annexation is not a "project" under CEQA.

Section 21167.3 does not *expressly* incorporate by reference the definition of "development project" in the Permit Streamlining Act. Rather, section 21167.3 merely incorporates "the timetable for agency action" set forth in article 5 of that act. (See *ante,* pp. 1177-1178.) A review of the statutes comprising article 5 indicates the specified times for various agency actions do not depend for their calculation upon the definition of "development project" set out in the Permit Streamlining Act.[11] Therefore, section 21167.3 does not *impliedly* incorporate the definition of "development project"; rather, section 21167.3 refers to the Permit Streamlining Act for the limited purpose of adopting its timetable for agency action. Section 21167.3 contains no significant ambiguity; the statute applies to all CEQA projects including this annexation.

2. *Section 21167.3 prohibited LAFCO from rejecting Anderson's negative declaration.*

Redding contends that even if LAFCO was initially a responsible agency, it had a duty to reject Anderson's negative declaration and to prepare an EIR.

Redding relies crucially on section 15096, subdivision (e) of the Guidelines, which provides: "(e) Decision on Adequacy of EIR or Negative Dec-

---

[11] Thus, for example, Government Code section 65952 provides: "(a) Any public agency which is a responsible agency for a development project that has been approved by the lead agency shall approve or disapprove the development project within whichever of the following periods of time is longer:

"(1) Within 180 days from the date on which the lead agency has approved the project.

"(2) Within 180 days of the date on which the completed application for the development project has been received and accepted as complete by that responsible agency.

"(b) At the time of decision by a lead agency to disapprove a development project becomes final, applications for that project which are filed with responsible agencies shall be deemed withdrawn."

laration. *If a responsible agency believes that the final* EIR or *negative declaration prepared by the lead agency is not adequate* for use by the responsible agency, the responsible agency must either: (1) Take the issue to court within 30 days after the lead agency files a notice of determination;

"(2) Be deemed to have waived any objection to the adequacy of the EIR or negative declaration;

"(3) Prepare a subsequent EIR if permissible under Section 15162; or

"(4) Assume the lead agency role as provided in Section 15052(a)(3)." (Italics added.)

However, contrary to Redding's contention, section 21167.3 prohibited LAFCO from having the belief required by the cited Guideline. Because Redding's pending lawsuit (Shasta County No. 87481) attacked Anderson's negative declaration, section 21167.3 required LAFCO to assume the negative declaration complied with CEQA, as the trial court concluded.[12]

Redding also contends LAFCO, as responsible agency, was obligated to reverse roles with Anderson and to assume lead agency status in the face of Anderson's assertedly inadequate EIR.

There are two flaws in Redding's argument. First, the governing Guideline does not allow role reversal here. That Guideline is section 15052, set out in the margin.[13] The Guideline authorizes role reversal only when the

---

[12] *The trial court was not required to determine whether subdivision (a) or (b) of section 21167.3 applied*, a determination turning on whether injunctive or similar relief had been granted in Shasta County No. 87481. The statute's subdivisions both require assumption of the validity of a negative declaration; they differ only in whether approval of a project is conditional. Here, Redding attacked the assumption of validity of the negative declaration and did not tender the issue whether approval should be under subdivision (a) or (b) of section 21167.3.

[13] Section 15052 of the Guidelines states: "(a) Where a responsible agency is called on to grant an approval for a project subject to CEQA for which another public agency was the appropriate lead agency, the responsible agency shall assume the role of the lead agency when any of the following conditions occur:

"(1) The lead agency did not prepare any environmental documents for the project, *and the statute of limitations has expired for a challenge to the action of the appropriate lead agency.*

"(2) The lead agency prepared environmental documents for the project, but the following conditions occur:

"(A) A subsequent EIR is required pursuant to Section 15162,

"(B) The lead agency has granted a final approval for the project, and

statute of limitations for challenging a lead agency's action has expired. Contrary to Redding's suggestion, the Guideline necessarily implies that the statute of limitations has expired *without a challenge to the lead agency's action having been filed*. The latter implication is necessary to give the Guideline a reasonable construction, since it would make no sense to refer to the statute of limitations in the abstract, without consideration of the filing of an action.

Moreover, the foregoing construction of the Guideline is in accord with the evident legislative intent of section 21167.3, whereas Redding's contention is not. ■ The fundamental rule of statutory construction is that the court should ascertain and implement the intent of the Legislature. (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 121 [253 Cal.Rptr. 1, 763 P.2d 852].) ■ The evident intent of section 21167.3 is to expedite CEQA review where a lawsuit contesting CEQA documentation is pending by designating *one forum* for resolution of claims of unlawful documentation and by requiring project review to proceed while the claims are resolved. That forum is the court. Redding's interpretation of the Guidelines conflicts with the purpose of section 21167.3 because Redding would have the adequacy of Anderson's negative declaration determined by both LAFCO and the court. Such a dual determination would cause confusion and provoke additional time-consuming litigation.

■ We hold that section 21167.3 and Guidelines section 15052 prohibited LAFCO from assuming lead agency status.

Redding cites *City of Santa Clara* v. *Local Agency Formation Com., supra,* 139 Cal.App.3d 923, apparently in aid of its role-reversal argument. However, in that case, a LAFCO ruled on a project before any lawsuit had been filed contesting CEQA documentation. (*Id.,* at pp. 926-927.) Section 21167.3 was therefore not implicated and is not discussed by the court. The case is therefore inapposite.

---

"(C) *The statute of limitations for challenging the lead agency's action under CEQA has expired*.

"(3) The lead agency prepared inadequate environmental documents without consulting with the responsible agency as required by Sections 15072 or 15082, *and the statute of limitations has expired for a challenge to the action of the appropriate lead agency.*

"(b) When a responsible agency assumes the duties of a lead agency under this section, the time limits applicable to a lead agency shall apply to the actions of the agency assuming the lead agency duties." (Italics added.)

Neither party contends this Guideline conflicts with section 21080.1, and we do not address the question.

The trial court correctly concluded section 21167.3 barred Redding's claims. The trial court therefore properly sustained LAFCO's demurrer without leave to amend.

### DISPOSITION

The judgment is affirmed.

Marler, J., and Deegan, J.,* concurred.

A petition for a rehearing was denied May 18, 1989, and appellant's petition for review by the Supreme Court was denied July 19, 1989.

---

*Retired judge of the Superior Court sitting under assignment by the Chairperson of the Judicial Council.